1

2

3

4

5            UNITED STATES DISTRICT COURT

6           EASTERN DISTRICT OF WASHINGTON

7

ALLEN CUTLER,                          NO:  15-CV-3090-FVS

8

REPORT AND RECOMMENDATION
9                    Plaintiff,         TO  DENY PLAINTIFF'S MOTION
                                        FOR SUMMARY JUDGMENT AND
10      v.                              TO GRANT DEFENDANT'S
                                        MOTION FOR SUMMARY
11   CAROLYN W. COLVIN,                 JUDGMENT

12                   Defendant.         ECF Nos. 12, 15

13

14       BEFORE THE COURT are the parties' cross motions for summary

15   judgment.  ECF Nos. 12[1] and 15.  This matter has been referred to the undersigned

16   magistrate judge for issuance of a report and recommendation.  ECF No. 17.  The

17   Court, having reviewed the administrative record and the parties' briefing, is fully

18   _____

19   [1] On January 22, 2016, Plaintiff filed a praecipe to the motion to correct dates.

20   ECF No. 13.  This report and recommendation cites to the motion as ECF No. 13.

1  informed.  For the reasons discussed below, **IT IS RECOMMENDED** Plaintiff's

2  Motion (ECF No. 12) be **DENIED** and Defendant's Motion (ECF No. 15) be

3  **GRANTED**.

### JURISDICTION

5  The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

6  1383(c)(3).

### STANDARD OF REVIEW

8  A district court's review of a final decision of the Commissioner of Social

9  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

10  limited; the Commissioner's decision will be disturbed "only if it is not supported

11  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

12  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

13  reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

14  (quotation and citation omitted).  Stated differently, substantial evidence equates to

15  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

16  citation omitted).  In determining whether the standard has been satisfied, a

17  reviewing court must consider the entire record as a whole rather than searching

18  for supporting evidence in isolation.  *Id.*

19  In reviewing a denial of benefits, a district court may not substitute its

20  judgment for that of the Commissioner.  If the evidence in the record "is

1   susceptible to more than one rational interpretation, [the court] must uphold the

2   ALJ's findings if they are supported by inferences reasonably drawn from the

3   record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

4   court "may not reverse an ALJ's decision on account of an error that is harmless."

5   *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

6   nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

7   party appealing the ALJ's decision generally bears the burden of establishing that

8   it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

9                   **FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

10          A claimant must satisfy two conditions to be considered "disabled" within

11  the meaning of the Social Security Act.  First, the claimant must be "unable to

12  engage in any substantial gainful activity by reason of any medically determinable

13  physical or mental impairment which can be expected to result in death or which

14  has lasted or can be expected to last for a continuous period of not less than twelve

15  months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

16  impairment must be "of such severity that he is not only unable to do his previous

17  work[,] but cannot, considering his age, education, and work experience, engage in

18  any other kind of substantial gainful work which exists in the national economy."

19  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

20

1    The Commissioner has established a five-step sequential analysis to

2    determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

3    404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

4    considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

5    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

6    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

7    404.1520(b); 416.920(b).

8    If the claimant is not engaged in substantial gainful activity, the analysis

9    proceeds to step two.  At this step, the Commissioner considers the severity of the

10   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

11   claimant suffers from "any impairment or combination of impairments which

12   significantly limits [his or her] physical or mental ability to do basic work

13   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

14   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

15   however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

16   §§ 404.1520(c); 416.920(c).

17   At step three, the Commissioner compares the claimant's impairment to

18   severe impairments recognized by the Commissioner to be so severe as to preclude

19   a person from engaging in substantial gainful activity.  20 C.F.R. §§

20   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income and disability insurance

benefits on January 5, 2012, alleging an onset date of February 16, 2009.  Tr. 176-

96.  The application was denied initially, Tr. 108-116, and upon reconsideration,

Tr. 118-29.  Plaintiff appeared for a hearing before an administrative law judge

("ALJ") on August 22, 2013.  Tr. 31-65.  On January 29, 2014, the ALJ denied

Plaintiff's claim.  Tr. 9-29.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 16, 2009, the alleged onset date. Tr. 14. At step two, the ALJ found Plaintiff has the following severe impairments: lumbar degenerative disc and degenerative joint disease, mild thoracic degenerative disc disease, obesity, and status post hernias. Tr. 14. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 15. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally lift ten pounds and can frequently lift less than ten pounds. He can stand for a total of two hours in an eight-hour workday. He can sit for about six hours in an eight-hour workday while briefly alternating positions about every half hour. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, and scaffolds. He can frequently balance. He can occasionally stoop. He can frequently kneel and crouch. He can occasionally crawl. He must avoid concentrated exposure to extreme cold, vibration, perfumes, odors, dusts, and gasses. He must avoid concentrated exposure to hazardous machinery and heights. He can perform simple, routine tasks.

Tr. 16. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 22. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as assembler, agricultural produce sorter, and ticket taker. Tr. 23. On that basis, the ALJ

concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 24.

On April 3, 2015, the Appeals Council denied review, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF Nos. 12, 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighted the medical opinion evidence; and

3. Whether the ALJ erred by failing to order a psychological consultative examination.

## DISCUSSION

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 13 at 11-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." Tr. 16-21.

*1. Daily Activities*

The ALJ found "the limitations that [Plaintiff] now alleges are inconsistent with his activities of daily living." Tr. 17. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability."). However, as in this case, "[e]ven where [Plaintiff's daily] activities

suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.  Here, Plaintiff testified that he experiences severe back and hip pain and lies down for at least six hours a day to relieve the pain. Tr. 49-50.  However, the ALJ "credits" Plaintiff with maintaining an "active daily live" that includes tending to his own self-care and grooming; serving as "primary care provider for his two youngest children who are ages two and three," which includes changing diapers when necessary; and preparing meals for himself and his children.  Tr. 17 (citing Tr. 37, 52-54, 57-58, 237); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Plaintiff's ability to care for young children without help undermined claims of totally disabling pain).  The ALJ further noted that Plaintiff does basic household chores; has cared for pets; goes out three to four times per week; shops in stores; and at no time indicates that he is physically unable to drive.  Tr. 18 (citing Tr. 53-54, 56, 236-38).  Finally, the ALJ found it notable that Plaintiff "engages in many physical activities that he enjoys," including: fishing, bike riding, swimming, and going for walks.[2]  Tr. 18 (citing Tr. 305, 465).

---

[2] Plaintiff argues that "the record relied upon by the ALJ actually states that, although [Plaintiff] enjoys these activities, his physical limitations prevent him

1        Plaintiff argues that "contrary to the ALJ's finding, [Plaintiff's] level of

2   activity is wholly consistent with his alleged limitations;" and cites his testimony

3   that he is limited in some areas of self-care, gets help with household chores, and

4   only makes microwaveable dinners.  ECF No. 13 at 13-14 (citing 52-54).  Plaintiff

5   also argues that the ALJ "improperly disregarded" the fact that his children are in

6   daycare every weekday, and that he receives help from others in caring for them at

7   other times.  ECF No. 13 at 14 (citing Tr. 54).  However, even if the evidence of

8   Plaintiff's daily activities in this case may be interpreted more favorably to the

9   Plaintiff, it is susceptible to more than one rational interpretation, and therefore the

10

11  from performing them."  ECF No. 13 at 14-15 n.5 (citing Tr. 465).  However, as

12  noted by Defendant, this record is part of an adult intake assessment that indicated

13  Plaintiff's "strength" in the "life domain" of "social/recreation (ways to have fun)"

14  was listed as "bike riding, swim, fish, take walks;" while the concern noted in this

15  category was only that "physical limitations prevent him from *exercising*."  ECF

16  No. 15 at 14 (emphasis added).  Moreover, only a month after this intake in

17  October 2012, Plaintiff reported riding a bike and going camping.  Tr. 469.  The

18  record also indicates that in May 2011 Plaintiff fell and injured his back while

19  fishing (Tr. 283); and in April 2011, Plaintiff reported riding his bike and doing leg

20  lifts (Tr. 312).

ALJ's conclusion must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Here, Plaintiff's daily activities were reasonably considered by the ALJ to be "inconsistent with the degree of limitation that [Plaintiff] now alleges." Tr. 18.  This was a clear and convincing reason to find Plaintiff not credible.

### 2.  *Duration Requirement*

The ALJ found that "the medical records do not reveal any twelve-month period of disabling impairments." Tr. 18.  Plaintiff cites medical evidence including Plaintiff's ongoing complaints of lower back pain (Tr. 315, 385, 429), and objective testing that indicated "degenerative changes" in Plaintiff's lumbar spine (Tr. 342, 381, 547, 550), to support his argument that "the ALJ's implication that the severity of [Plaintiff's] back impairment is relatively recent is wholly unsupported by the medical record." ECF No. 13 at 15.  As noted by Defendant, Plaintiff's argument is misplaced.  ECF No. 15 at 15.  The ALJ did find Plaintiff's lumbar degenerative disc and degenerative joint disease, and mild thoracic degenerative disc disease, were severe impairments during the entire relevant adjudicatory period; and specifically noted that Plaintiff "would need a fair amount of accommodation due to the severity of his back problems." Tr. 20.  However, as correctly noted by the ALJ and unchallenged by Plaintiff in his briefing, the overall record does not contain evidence that Plaintiff's alleged impairments met the duration requirement for a finding of disability, which requires them to have lasted

1    or be expected to last for a continuous period of not less than 12 months. *See* 42 §

2    U.S.C. § 423(d)(1)(A); *see also Chaudhry*, 688 F.3d at 672.

3        *3. Lack of Objective Medical Evidence*

4        Further, the ALJ found that "[e]ven still, the records in evidence fail to

5    establish the degree of limitation that the [Plaintiff] is now alleging." Tr. 18.   An

6    ALJ may not discredit a claimant's pain testimony and deny benefits solely

7    because the degree of pain alleged is not supported by objective medical evidence.

8    *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

9    *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in

10   determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261

11   F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2).  Minimal objective evidence is a factor

12   which may be relied upon in discrediting a claimant's testimony, although it may

13   not be the only factor. *See Burch*, 400 F.3d at 680.  The ALJ set out, in detail, the

14   medical evidence regarding Plaintiff's impairments, and ultimately concluded that

15   the assessed RFC "fully accommodates for the limitations supported by the

16   objective medical evidence." Tr. 18-20.  The ALJ specifically discussed medical

17   evidence contradicting Plaintiff's claims of disabling back pain.  Tr. 18-20.  For

18   example, in September 2011, Plaintiff was referred for a pain consultation and

19   upon examination had limited range of motion, and tenderness in the midline lower

20   lumbar spine and over the left lateral hip; but during the same visit straight leg

raise testing was negative at 90 degrees bilaterally and Plaintiff was able to

ambulate independently.  Tr. 19 (citing Tr. 539-40).  The medical provider at this

visit also reported that Plaintiff exhibited "poor effort" on examination of the lower

extremities; and noted that while recent MRI studies demonstrated multi-level

degenerative changes in the mid lumbar spine, "there was no disc herniation or

severe spinal stenosis noted."  Tr. 540.  In July 2013, Plaintiff underwent an EMG

that did find that needle evaluation of the right anterior tibialis muscle showed

"increased insertional activity and moderately increased spontaneous activity" and

increased insertional activity in the right lower lumbar paraspinal muscle.  Tr. 20

(citing Tr. 547).  However, all remaining muscles showed no evidence of

instability; all nerve conduction studies were normal; muscle tone was normal

throughout; toe raises and heel walks were performed; hip rotation was pain free

bilaterally; and Plaintiff maintained 4/5 strength in his right leg and 5/5 strength in

his left leg.  Tr. 547.  Such inconsistencies between Plaintiff's alleged limitations

and medical evidence provided a permissible reason for discounting Plaintiff's

credibility.  *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's

testimony as to the severity of her pain and impairments is unreliable, the ALJ

must make a credibility determination … [t]he ALJ may consider testimony from

physicians and third parties concerning the nature, severity and effect of the

symptoms of which the claimant complains."); *see also Rollins*, 261 F.3d at 857

1   ("While subjective pain testimony cannot be rejected on the sole ground that it is

2   not fully corroborated by objective medical evidence, the medical evidence is still

3   a relevant factor in determining the severity of the claimant's pain and its disabling

4   effects.").

5        Plaintiff contends that the ALJ's "recitation of the medical record

6   improperly cherry-picks and mischaracterizes the objective medical evidence."

7   ECF No. 13 at 16.  In support of this argument, Plaintiff first argues that the ALJ

8   improperly "disregarded" Plaintiff's discharge summary indicating that his pain

9   had "not improved" after physical therapy.  *See id*.  However, the ALJ correctly

10  noted that physical therapy records indicate Plaintiff was able to perform stretches;

11  he showed "some" improvement in multiple categories; and his prognosis was

12  good.  Tr. 329-30, 336. The ALJ also cites Plaintiff's report that physical therapy

13  "has helped."  Tr. 337.  Plaintiff additionally challenges the ALJ's finding that

14  "throughout the record, [Plaintiff] has been able to ambulate independently, has

15  negative straight leg raise tests, and is usually observed to be in no apparent

16  distress."  Tr. 19.  Plaintiff argues the ALJ improperly cited to one page of the

17  record that did not include these examination findings.[3]  ECF No. 13 at 16.

18

19  [3] Plaintiff similarly argues that the ALJ failed to provide citations in support the

20  finding that "various providers note that the claimant appears to embrace an

1    However, as noted by Defendant, despite an error in citation, the ALJ specifically

2    referred to findings "throughout the records" and, while Plaintiff may correctly

3    identify records in support of his alleged limitations, the overall record also

4    includes support for the ALJ's conclusion.  ECF No. 15 at 17 (citing Tr. 305, 354-

5    56, 367, 372, 374, 376, 378, 383, 386, 408, 416, 421, 427, 473, 481-85, 488-90,

6    501, 516, 519, 527-30, 533-38, ).  "[W]here evidence is susceptible to more than

7    one rational interpretation, it is the [Commissioner's] conclusion that must be

8    upheld."  *Burch*, 400 F.3d at 679; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039

9    (9th Cir. 1995) ("[t]he ALJ is responsible for determining credibility").  For all of

10

11

_____

12    excessively sedentary lifestyle."  ECF No. 13 at 16 n.6 (citing Tr. 19).  Plaintiff

13    contends that records noting he is not very active "attribute this lack of activity to

14    his chronic pain."  *Id*.  However, Defendant correctly notes that the records cited

15    by Plaintiff in support of this argument are based on Plaintiff's subjective report

16    and do not contain assessments by medical providers.  ECF No. 15 at 17-18 (citing

17    Tr. 337, 435).  Moreover, even assuming, arguendo, that the ALJ did err by failing

18    to support this finding, any error is harmless because the ALJ's ultimate credibility

19    finding is adequately supported by substantial evidence.  *See Carmickle v. Comm'r*

20    *Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

these reasons, the lack of corroboration of Plaintiff's testimony in the record as a whole was properly considered by the ALJ.

### 4. Drug Seeking Behavior

The ALJ found the credibility of Plaintiff's pain complaints "is questionable given his obvious motivation to obtain more narcotic pain medication." Tr. 20-21. Drug-seeking behavior can constitute a clear and convincing reason to discount a claimant's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (holding that evidence of drug-seeking behavior undermines a claimant's credibility). Here, the ALJ relied on Plaintiff's discharge from a relapse prevention program in 2012 for "mismanaging his narcotic pain medication." Tr. 20 (citing Tr. 570). As noted by the ALJ, the Plaintiff further confirmed at the hearing that he was indeed taken off Percocet after being accused of overusing the medication. Tr. 20, 38-39. Finally, the ALJ found that "[t]hroughout the medical records, the claimant makes ongoing complaints of pain, which appear to vary in severity. Records indicate that he has gone to different providers, and has often been prescribed pain medication. Depending on the claimant's complaints, his medication is sometimes increased." Tr. 20.

Plaintiff generally argues that the overall record, including objective EMG and MRI test results, undermines any finding that he was "simply seeking narcotic

medication." ECF No. 13 at 17. However, as discussed above in detail above, while the ALJ acknowledged that Plaintiff "has some severe physical impairment" (Tr. 21); the record as a whole, including objective findings, does not corroborate Plaintiff's subjective complaints. Plaintiff also contends that the record does not support this finding because "multiple treatment records explicitly state that [Plaintiff] requested not to be put on narcotic medications for any reason." ECF No. 13 at 17. However, Plaintiff cites only three records in support of this argument (Tr. 481, 510, 514);[4] and the overall record is replete with medical treatment notes and emergency room visits detailing Plaintiff's complaints of pain and consistent prescription of pain medication. *See* ECF No. 15 at 19 (citing Tr. 312-16, 322-23, 354-55, 385-86, 390-93, 421-22 (provider refused to provide narcotics), 435, 539-40). Moreover, regardless of Plaintiff's interpretation of the record as to his motivation for obtaining narcotic medication; the evidence as a whole is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. For all of these

---

[4] The Court notes that all three of the records indicating that Plaintiff requested not to be put on narcotic medication were dated at least six months *before* Plaintiff was subsequently discharged from treatment for mismanaging his medication. *See* Tr. 481, 510, 514, 570.

1  reasons, this was a specific, clear, and convincing reason to discredit Plaintiff's

2  testimony.

3      *5. Criminal History*

4      Finally, the ALJ noted "in passing that the claimant has an extensive

5  criminal history," including: nine prior felony convictions; "a bunch of"

6  misdemeanor convictions, and arrests for theft, possession of stolen property,

7  assault, taking a motor vehicle, malicious mischief, driving without a license,

8  writing bad checks, and car prowling.  Tr. 21 (citing Tr. 41, 463).  The ALJ

9  emphasized that Plaintiff's criminal history was not the "primary thing" she

10  considered, but she did accord "particular weight to claimant's extensive history of

11  crimes of dishonesty in forming the opinion that he is not entirely credible."  Tr.

12  21.  Plaintiff notes that his last conviction was "three-and-a-half to four years"

13  before the hearing on this matter.  ECF No. 13 at 17 n.8.  However, particularly

14  given the nature and extent of Plaintiff's criminal history, it was proper for the ALJ

15  to consider this factor in making the adverse credibility determination.  *See*

16  *Bunnell*, 947 F.2d at 346; *see also Hardisty v. Astrue,* 592 F.3d 1072, 1080 (9th

17  Cir. 2010) (relying in part on a prior conviction when assessing credibility has a

18  reasonable basis in law); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal.

19  2007) (convictions for crimes of moral turpitude are proper basis for adverse

20  credibility finding).

1    The ALJ provided several specific, clear and convincing reasons for

2  rejecting Plaintiff's symptom claims.

3    **B. Medical Opinion Evidence**

4    Next, Plaintiff faults the ALJ for discounting the treating medical opinions

5  of Paul Emmans, III, D.O.  ECF No. 13 at 6-11.

6    There are three types of physicians: "(1) those who treat the claimant

7  (treating physicians); (2) those who examine but do not treat the claimant

8  (examining physicians); and (3) those who neither examine nor treat the claimant

9  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

10 *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

11 Generally, a treating physician's opinion carries more weight than an examining

12 physician's, and an examining physician's opinion carries more weight than a

13 reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

14 to opinions that are explained than to those that are not, and to the opinions of

15 specialists concerning matters relating to their specialty over that of

16 nonspecialists."  *Id*. (citations omitted).

17    If a treating or examining physician's opinion is uncontradicted, the ALJ

18 may reject it only by offering "clear and convincing reasons that are supported by

19 substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

20 "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r, of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir. 1995)).

In April 2011 and May 2011, Dr. Emmans described Plaintiff's limitations as "subjective complaints" of diffuse back and lower extremity pain precluding him from repetitive or heavy labor. Tr. 286, 292. Dr. Emmans opined that Plaintiff was limited to "light work," with a "time limit" of twenty-one to thirty hours of work per week; although he was not limited in the number of hours he could participate in activities related to preparing for and looking for work. Tr. 286-87, 292-93. The ALJ gave "great weight" to Dr. Emmans' opinion that Plaintiff was limited to light work, and noted this finding was supported by the overall record, including: physical evaluations and observation of Plaintiff during treatment, as well as Plaintiff's activities of daily living. Tr. 21. However, the ALJ gave "little weight" to Dr. Emmans' opinion that Plaintiff could only work twenty-one to thirty hours per week, because it was rendered in "check the box" format "with no support or explanation provided for it." Tr. 21.

Opinions on a check-box form or report which do not contain significant explanation of the basis for the conclusions may be accorded little or no weight. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  Further, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Plaintiff argues that because "Dr. Emmans' opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record, the ALJ erred by failing to accord it controlling weight."  ECF No. 13 at 8-9 (citing *Garrison*, 759 F.3d at 1013 (finding ALJ erred by failing to recognize that a treating physician's opinion was "based on significant experience" and "supported by numerous records")).[5]  In support of this argument, Plaintiff cites

_____

[5] Plaintiff also briefly argues that because the portions of Dr. Emmans' opinions that the ALJ did credit, namely the lifting and carrying limitations, were also rendered in check-box format; "the ALJ cannot rely solely upon this [same] criticism of the opinion to discredit the limitation to less than full-time work."  ECF No. 13 at 9.  However, as discussed in detail above, the ALJ provided the requisite specific and legitimate reason to reject the portion of Dr. Emmans' opinions regarding Plaintiff's ability to perform full time work.  While not

MRI and x-ray results; an examination performed by Dr. Emmans in February 2011 that found Plaintiff showed distress when standing, slow movement on the exam table, tenderness to palpation in the lumbosacral region in to the bilateral sacroiliacs, lumbar and mid-thoracic somatic dysfunction, and bilateral paraspinal involuntary muscle spasm (Tr. 314); and "numerous" other examinations that Plaintiff argues support Dr. Emmans' finding that Plaintiff could not perform work for forty hours a week.  ECF No. 13 at 8.  However, as noted by Defendant, Dr. Emmans did not provide any of the records cited by Plaintiff, including the objective testing, as a basis for his check-box opinion that Plaintiff was not able to work full time; and all of the objective tests cited by Plaintiff, aside from one x-ray in 2010 (Tr. 274), were dated after Dr. Emmans' opinions and therefore could not serve as a basis for his opinion (Tr. 342, 381, 547, 550).  ECF No. 15 at 8.  The

_____

identified by the Plaintiff, the ALJ also explicitly found that the portion of Dr. Emmans' opinions limiting Plaintiff to light work were "supported by the physical evaluations of the claimant, observations of him during appointments consistently showing him to be in no acute distress, and the claimant's activities of daily living as described above."  Tr. 21.  "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."  *Burch*, 400 F.3d at 679.

1   Court also notes that in the May 2011 opinion, Dr. Emmans' reported that there

2   were "specific issues that need further evaluation or assessment," including:

3   Plaintiff's physical therapy and getting an "MRI subsequent to that" treatment.  Tr.

4   287.  For all of these reasons, the Court finds this was a specific and legitimate

5   reason for the ALJ to reject Dr. Emmans' opinions.

6        Plaintiff additionally argues that the ALJ's "own findings … are fully

7   consistent with Dr. Emmans' opinion that [Plaintiff] cannot perform full-time work

8   at any exertional level and, thus, undermine her rejection of that opinion."  ECF

9   No. 13 at 10.  In support of this argument, Plaintiff cites the ALJ's assessed RFC

10  and statement in the decision that she had "limited [Plaintiff] to a limited range of

11  light work" and "the lifting, sitting, and standing restrictions are consistent with a

12  sedentary exertional level."  Tr. 16, 22.  However, as noted by Defendant, Dr.

13  Emmans did not opine that Plaintiff could not work full-time "at any exertional

14  level," as asserted by Plaintiff.  ECF No. 15 at 9 (citing Tr. 286, 288, 292-93).

15  Moreover, the ALJ did not find that Plaintiff was limited to sedentary work, rather,

16  she limited to Plaintiff to less than the full range of light work and further

17  accommodated the Plaintiff to "sit for six hours in an eight-hour workday while

18  briefly alternating positions about every half hour."   Tr. 16, 20.  Plaintiff does not

19  specifically challenge the ALJ's formulation of the RFC or her findings at step five

20  that, based on the vocational expert's testimony, even with all of these limitations

there are jobs Plaintiff could perform in the national economy.  Tr. 23-24; *see*

*Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)

(court may decline to address issue not raised with specificity in Plaintiff's

briefing).[6]  For all of these reasons, the Court finds no inconsistencies between the

ALJ's own findings, and her properly supported rejection of Dr. Emmans'

opinions.

C. **Consultative Psychological Examination**

Plaintiff faults the ALJ for failing to order a consultative psychological

examination.  ECF No. 13 at 18-20.  While a claimant ultimately bears the burden

of establishing disability, the ALJ does have a "special duty to fully and fairly

---

[6] Plaintiff briefly argues that the occupational base for sedentary work was further

eroded by (1) the ALJ's accommodation in the RFC that Plaintiff could alternate

positions every half hour, and (2) the psychological impairments he argues were

not properly considered by the ALJ.  ECF No. 13 at 10 n.4.  This argument is

misplaced.  As discussed above, the ALJ did not find that Plaintiff was limited to

"less than sedentary work;" and Plaintiff does not specifically identify any errors in

the ALJ's RFC formulation or her step five findings.  Further, as discussed below,

the ALJ did not err in considering any psychological impairments alleged by

Plaintiff.

1    develop the record and to assure that the claimant's interests are considered."

2    *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted).   The ALJ

3    has broad latitude in ordering consultative examinations.  *See Reed v. Massanari*,

4    270 F.3d 838, 842 (9th Cir. 2001).  However, an ALJ's duty to develop the record

5    is triggered by ambiguous evidence, the ALJ's own finding that the record is

6    inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is

7    ambiguous.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

8          Here, at step two, the ALJ found that while the record included complaints

9    of depression related to Plaintiff's physical condition, "there is no evidence to

10   show that it would cause more than minimal limitations in the claimant's ability to

11   perform basic work activities," was therefore a "non-severe medically

12   determinable impairment."  Tr. 15.  The ALJ provides substantial evidence in

13   support of this conclusion, including: Plaintiff's complaints are "vague in nature;"

14   he has sought minimal treatment for this alleged impairment; he is consistently

15   observed as alert, oriented, and able to follow multi-step instructions; and his

16   mental health complaints are "recent" and do not meet the durational requirement

17   of the regulations.  Tr. 15.  The ALJ also found that post-traumatic stress disorder

18   ("PTSD") was a non-medically determinable impairment.  Tr. 15.  Plaintiff's

19   briefing does not specifically contest the ALJ's conclusion that PTSD was a non-

20   medically determinable impairment; and that his depression was not severe, and

should not be included as a limiting factor in the RFC. Instead, Plaintiff generally contends that "the evidence of significant mental health impairments raised a duty for the ALJ to further inquire into any resulting limitations." ECF No. 13 at 19 n.9. In support of this argument Plaintiff relies entirely on two GAF scores of 37 and 38 (Tr. 468, 570); four treatment records dated March through May of 2013 that indicated depression (Tr. 501, 508, 510, 516); and one additional record that diagnosed PTSD and major depressive disorder in October 2012 (Tr. 468). ECF No. 13 at 19. However, as noted in the ALJ's unchallenged step two analysis, these records do not indicate that these symptoms limited his work capacity in any manner. As the record stands, the ALJ's interpretation of this evidence at step two is reasonable and must be upheld. *See Burch*, 400 F.3d at 679.

Plaintiff does correctly note that the State agency psychologist indicated a psychological consultative examination should be performed.[7] ECF No. 13 at 19

---

[7] While not addressed by either party, the Court notes that the consultative evaluation was intended to evaluate Plaintiff's allegations of dyslexia and a learning disorder, *not* the impairments of depression and PTSD currently identified in Plaintiff's briefing. *See* Tr. 90. The record further indicates that Plaintiff's initial claims for disability did not allege he was disabled due to depression or PTSD. Tr. 108, 123.

(citing Tr. 90).  However, despite "[g]iving the [Plaintiff] the benefit of the doubt," and attempts to contact him through his attorney and by mail to attend a consultative evaluation, Plaintiff did not respond.  Tr. 90.  In his briefing, Plaintiff asserts that "the record includes no indication that [he] received the request for contact."  ECF No. 13 at 19 n.10.  However, the record includes notices of reconsideration advising Plaintiff that he could request a hearing, which also note Plaintiff's lack of response to attempts to contact the Plaintiff and obtain consent for a psychological evaluation.  ECF No. 15 at 23 (citing Tr. 118, 123).  Plaintiff did request a hearing, through his attorney, but did not attempt to obtain a consultative examination prior to the hearing; nor did Plaintiff make an argument at the hearing that the record was incomplete or inadequate, or that a consultative examination was necessary.  *See* Tr. 31-65.  For all of these reasons, the ALJ did not err in failing to order a consultative examination *sua sponte* for alleged impairments that the ALJ properly found would cause no more than minimal limitations in Plaintiff's ability to perform basic work activities.  Plaintiff fails to identify ambiguous evidence or inadequacy in the record that would trigger the ALJ's duty to develop the record in this case.  *See Tonapetyan*, 242 F.3d at 1150.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 15, be **GRANTED**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

1  § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern

2  District of Washington.

3      A magistrate judge's recommendation cannot be appealed to a court of

4  appeals; only the district judge's order or judgment can be appealed.

5      The District Court Executive is directed to enter this Report and

6  Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

7  **MANAGEMENT DEADLINE ACCORDINGLY.**

8      DATED July 21, 2016.

9                    <u>s/Mary K. Dimke</u>
                    MARY K. DIMKE
10                   UNITED STATES MAGISTRATE JUDGE